DECISION
Plaintiffs appeal Defendant's assessments of state income tax for tax year 1995. This matter is before the court on cross-motions for summary judgment filed by the parties. Oral *Page 2 
argument was held in the courtroom of the Oregon Tax Court, Salem, Oregon, on March 6, 2008.
There is no material issue of fact.
 I. STATEMENT OF FACTS
Plaintiffs are three corporations located in Washington D.C., Idaho, and Utah and their shareholders-employees. (Stip Facts 27, 38, 42.)[1]
Shareholders-employees of Plaintiff corporations are referred to as Principals under the terms of the Partnership Agreement of Stoel Rives Boley Jones Grey (Partnership Agreement).[2] (Stip Fact 9.) Each Principal "signed a document titled `Acknowledgement and Agreement,' which read as follows:
 `Each of the undersigned hereby acknowledges that the undersigned is a Principal of STOEL RIVES BOLEY JONES GREY OF [THE DISTRICT OF COLUMBIA, P.C./IDAHO, P.A./UTAH P.C.], and a Member for purposes of the foregoing Partnership Agreement ("Agreement") and, as such, is entitled to the benefits of and subject to and bound by the terms of the Agreement applicable to Members, including, without limitation, the provisions of Section 16.6 (Indemnity) binding upon Members who are Principals.'"
(Stip Facts 28, 36, 44.) "The Partnership Agreement states that Principals are not, and are not intended to be, Individual Partners under the Partnership Agreement or under applicable law." (Stip Fact 99.) "The Partnership Agreement states that every effort shall be made to minimize differences in treatment between Principals of Corporate Partners, on the one hand, and Individual Partners, on the other." (Stip Fact 95.) Principals, like Individual Partners, could be Capital Members with the right to participate in the management of the law firm. (Stip Fact 12.)
Plaintiff corporations were "Corporate Partners" under the terms of the Partnership Agreement. (Stip Fact 8.) Separate bank accounts for each Corporate Partner were maintained in Oregon. (Stip Facts 50, 51, 52.) Corporate Partners held annual corporate meetings and made *Page 3 
timely filings of annual reports, federal and state employment returns, and federal and state income tax returns. (Stip Facts 47, 48, 53-62, 65, 67, 68, 71-74, 79, 84.)
Plaintiffs conducted their operations under this organizational structure since 1991 in D.C. and 1992 in Idaho and Utah. (Stip Facts 27, 35, 43.) The Firm [Stoel Rives Boley Jones Gray] Management Committee was responsible for all operating decisions and policies. (Stip Fact 97.) "The Firm Management Committee of Stoel Rives consisted exclusively of Capital Members and included Principals and Individual Partners." (Stip Fact 98.) Additional information about the Plaintiffs and their operations were submitted in the 32 pages of stipulated facts.
Throughout its decision, unless reciting quoted material, the court will use the defined terms Principals and Corporate Partners in reference to the named Plaintiffs. Stoel Rives Boley Jones Gray will be referenced as Stoel Rives.
 II. ANALYSIS
For tax year 1995, Plaintiffs allege that the above named Principals who were employees of Corporate Partners "for purposes of Oregon income taxation[,] * * * were not partners of Stoel Rives during the Subject Year, but were shareholders and employees of Stoel Rives Boley Jones Grey of the District of Columbia, P.C., Stoel Rives Boley Jones Grey of Idaho, P.A., or Stoel Rives Boley Jones Grey of Utah, P.C." (Stip Fact 168.) In contrast, Defendant "contends that, for purposes of Oregon income taxation, the Individual Plaintiffs [Principals] were partners of Stoel Rives during the Subject Year." (Stip Fact 167.) Principals who were non residents of Oregon would pay Oregon state income tax on their share of the Stoel Rives' partnership income that is sourced to Oregon if the court concludes that they were partners in the Stoel Rives partnership and not Corporate Partners's shareholders-employees.See ORS 316.127(1)(a).[3] *Page 4 
A. Corporate Partners
Before considering the diverse positions of the parties, the court begins with a review of the federal income tax laws applicable to Corporate Partners. Defendant states that there is no "dispute that the Corporate Plaintiffs [Corporate Partners] were duly formed as corporations in their respective jurisdictions." (Def's Resp to Ptfs' Mot for Summ J and Def's Cross-Mot for Summ J (Cross-Motion) at 5.) Corporate Partners elected to be taxed as Subchapter S corporations. An S corporation is defined as a "small business corporation" for which an election under IRC section 1362(a)[4] is properly filed and accepted by the Secretary of the Treasury. IRC 1361(b)(1) defines a small business corporation as a domestic corporation that meets certain statutory requirements. An election to be an S corporation continues until terminated. See IRC § 1362(d). An S corporation election may be terminated as follows: (1) revocation by the shareholder(s); (2) the entity ceases to be a "small business corporation;" or (3) the entity's passive investment income exceeds 25 percent of its gross receipts for the previous three consecutive years. "The Code provides no other manner in which to terminate an S corporation election." Aaron v. Comm'r, 87 TCM (CCH) 1087 (2004), (citing Mourad v. Comm'r, 121 TC 1, 4 (2003)). Defendant stated in its oral argument that the court need not conclude that Corporate Partners's Subchapter S corporation election must be terminated and declared invalid in order for the Principals to be subject to Oregon state income taxation.
B. Corporate entity
Corporate Partners are commonly referred to as professional service corporations. "The professional service corporation acts, enacted by the various States in recent years, removed *Page 5 
previously existing restrictions on the capacity of certain persons [e.g., accountants, lawyers, doctors] to practice their professions under the corporate form. In so doing, such legislation simply placed such persons on a par with other taxpayers with respect to their freedom to adopt that form of doing business; it did not relieve the corporation of the obligation of performing some meaningful business function in order to gain recognition as a separate entity for tax purposes.National Investors Corporation v. Hoey (National Investors), 144 F2d 466
(C.A. 2, 1944). The corporation must be given substance through the manner in which it actually operates." Roubik v. Comm'r, 53 TC 365, 382
(1969). The court must look at the facts and circumstances of this case to determine whether Corporate Partners operated as a corporation.[5]
The general rule is that "a corporation and its stockholders are deemed separate entities * * * [except in] exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." New Colonial Ice Co. v. Helvering (NewColonial), 292 U.S. 435, 442 (1934) (n. refs. omitted.). Cf. see alsoNoonan v. Comm'r (Noonan), 52 TC 907, 910 (1969), aff'd, 451 F2d 992
(9th Cir 1971) (citing the above quoted language in New Colonial and holding that the facts of that case qualify as an exceptional situation and compel the court to "conclude that for Federal tax purposes these corporations clearly fit the exception to the rule because * * * the only reason for their existence was to achieve [federal] tax savings.") *Page 6 
The test of whether a corporation will be recognized as a taxable entity was stated by the United States Supreme Court in MolineProperties v. Commissioner (Moline), 319 U.S. 436, 438-439 (1943):
 "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."
(Emphasis added.) (Citations omitted.)
Many courts have concluded that the Supreme Court in Moline set forth a disjunctive, or two-prong, economic substance test. For example, the United States Tax Court stated that:
 "[i]n applying the Moline test, courts have looked most frequently to the language following the disjunctive `or,' i.e., the business activity of the corporation. Little emphasis has been placed on business purpose. Courts have recognized, however, that Moline establishes a two-pronged test, the first part of which is business purpose, and the second, business activity. Business purpose or business activity are alternative requirements."
Rogers v. Comm'r (Rogers), 34 TCM (CCH) 1254, 1256 (1975) (citations omitted).
Six years after Moline, the United States Supreme Court expanded its holding when it concluded that a corporation that is formed for the sole purpose of tax avoidance or for a passive purpose may be disregarded as a dummy or "sham." National Carbide Corp. v. Commissioner, 336 US 422,433 (1949). A corporate entity may not be ignored if there is any legitimate business purpose or advantage, or actual business activity.See Paymer v. Commissioner, 150 F2d 334 (2nd Cir 1945) (holding that corporation was a dummy corporation where the entity held title to real estate but shareholder's partnership collected the rent from the real estate; a second corporation that secured the loan in its name and distributed the proceeds was not a dummy corporation); Dooley v.Comm'r, 48 TCM (CCH) 1372 (1984) (holding that a business *Page 7 
activity results from shielding a shareholder from personal liability); and Strong v. Comm'r, 66 TC 12 (1976) (holding that a corporation formed to avoid usury laws and that secures financing, mortgages and loans is not a dummy corporation, but engaged in business activities.)
C. Business activity
"[B]lack letter law ever since Moline Properties Inc. v.Commissioner, 319 U.S. 436 (1943) [states] that a corporation is, almost by definition, an entity engaged in `business activity.'" Buono v.Comm'r, 74 TC 187, 197 (1980). "[T]here is a strong presumption in the law favoring recognition of the corporation as a viable economic entity separate and distinct from its shareholders." Achiro v. Comm'r,1981 WL 11333, 77 TC 881(1981), n 26, citing Klein v. Board of Supervisors,282 US 19, 24 (1930).
Historically, only a minimal quantum of business activity was required under Moline for an entity to be recognized. What is required is the actual conduct of some activity related to the production of income.See Britt v. United States (Britt), 431 F2d 227, 237 (5th Cir 1970) (holding that "[b]usiness activity is required for recognition of the corporation as a separate taxable entity; the activity may be minimal."); Strong, 66 TC at 24 (holding that "[t]he degree of corporate purpose and activity requiring recognition of the corporation as a separate entity is extremely low" and citing the Britt holding.); andRogers, 34 TCM at 1257 (stating that even though the entity's business activities were "minimal", the activities were "sufficient to enable it to carry out the purpose for which it was created" and "require recognition under the second part of the Moline test.")
The U.S. Tax Court held there was business activity where corporate shareholders held title to tangible assets, collected income for services rendered to another (even a wholly owned corporation), deposited the funds in a bank account, respected its corporate identity by holding meetings of the board of directors and shareholders, maintained a separate checking account and *Page 8 
its own set of books and records, and filed federal corporate tax returns. "All of such conduct constitutes business activity." Rhoads v.Comm'r (Rhoads), 53 TCM (CCH) 1308 (1987). Rhoads cited Hospital Corp ofAmerica v. Comm'r, 81 TC at 579 (1983) stating, "We have held that `the quantum of business activity [required to justify recognition for tax purposes] may be rather minimal.'"
The Oregon Tax Court in Brown and McAlpin v. Department of Revenue(Brown), 3 OTR 481 (1969) concluded that two corporations could be "recognized as separate business entities for tax purposes."Brown at 491. In reaching that conclusion, the court considered the following: (1) plaintiffs "duly and regularly incorporated under the laws of Oregon;" (2) plaintiffs "recognized the corporation as a separate entity and complied with all the statutory or regulatory requirements applicable to corporations;" (3) plaintiffs' business activities, which were "the rendition of personal services" were not "an obstacle" to their decision to operate as a corporation; and (4) the "fact that plaintiffs [were] the only employees of their respective corporations does not mean that plaintiffs are not conducting legitimate business activities." Id.
D. Business purpose
Under the two-prong disjunctive Moline test, there is no need to find a business purpose for entity recognition if the entity conducts business activity. However, where there is no business activity conducted, a business purpose is required. A purpose to reduce federal income taxes will not justify the separate existence of the entity under the business purpose prong of Moline.[6] The business purpose inquiry should focus on the purposes of the persons who create the entity. The purpose could "be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed *Page 9 
convenience." Moline at 438-39. If the purpose "is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."Id. at 439. It is important to note that "[i]t is not, however, the personal purpose of a taxpayer in creating a corporation which is determinative of whether its separate entity will be disregarded for Federal tax purposes, but rather whether a bona fide intention in creating it was that the corporation, itself, should have some substantial business function or actually engage in a business activity." John F. Nutt (Nutt) v. Comm'r, 39 TC 231, 249 (1962),rem'd on other grounds, 351 F2d 452 (9th Cir 1965) (citing Jackson v.Commissioner, 233 F2d 289 (CA 2 1956), aff'd 24 TC 1 (1955).)
E. Subchapter S corporations
The IRS now agrees that S corporations need not be actively engaged in trade or business to retain their status. See Rev Rul 75-188, 1975-1 CB 276. Merely maintaining the S corporation status does not necessarily equate to being engaged in a trade or business activity. For S corporations, like other corporations, the business activity level is fairly minimal. The maintenance of accounting records and separate bank accounts, execution of contracts, ownership of property in corporate name, and representation to third parties, (e.g., regulatory and tax authorities, service providers, and landlords) that the entity is an independent organization are qualifying business activities. Two cases among others in support of the above conclusion are William H. Bell v.Comm'r, 45 TCM (CCH) 97 (1982) (after listing and evaluating 11 activities, the court held that the S corporation did conduct business activities and should be recognized as a separate taxable entity from its shareholders); and Rhoads, 53 TCM at 1320 (concluding after evaluating the entity that the S corporation was "formed for a business purpose and engaged in substantive business activity"). *Page 10 
F. Disregard of the corporate form
Even though Defendant concludes that Corporate Partners were duly formed corporations, Defendant asks this court to conclude that Plaintiffs' corporate entities are a sham, because there is "no basis for this court to conclude that the stated business purpose for creating the Corporate Plaintiffs [Partners] has substance" and their only purpose is tax avoidance. (Def's Reply to Ptfs' Resp to Def's Cross-Mot for Summ J (Reply) at 17.)
The U.S. Tax Court stated that "the [legislative] policy favoring the recognition of corporations as entities independent of their shareholders requires that we not ignore the corporate form so long as the corporation actually conducts business." Daniel F. Keller v.Comm'r (Keller), 77 TC 1014, 1031-32 (1981), aff'd, 723 F2d 58 (10th Cir 1983). However, Moline clearly stated that "the corporate form may be disregarded," particularly "in matters relating to the revenue * * * where it is a sham or unreal. In such situations the form is a bald and mischievous fiction." Moline at 439, citing Higgins v. Smith,308 US 473, 477, 60 S Ct 355, 84 L Ed 406 (1940) (holding that if an entity "employed for doing business * * * is unreal or a sham" it may be respected or not depending on "the effect of the fiction as best serves the purposes of the tax statute."); and Gregory v. Helvering,293 US 465, 469, 55 S Ct 266, 267 (1935) (holding that "[t]he whole undertaking * * * was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else" and concluding that a transaction need not be respected when it was solely undertaken to secure a federal tax benefit clearly beyond the Congressional intent.).
G. Tax avoidance
One of the issues before the court is whether Corporate Partners were solely created to avoid tax. It is accepted that "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot *Page 11 
be doubted." Id. The case law developed from analysis of the tax avoidance issue makes reference to "tax" with the implicit understanding that the tax at issue is "federal." See e.g., Nutt, 39 TC at 249
(stating that "its separate entity will be disregarded for Federal tax purposes"); and Grigoraci v. Comm'r, 84 TCM (CCH) 186 (holding that "[f]or Federal tax purposes, a validly organized corporation is usually respected, but it may be disregarded in instances where it is found to be sham.")
For partnerships or Subchapter S corporations, there is no federal entity tax. Each shareholder of a Subchapter S corporation pays a federal tax based on the pass-through of the entity's income or loss. There is no allegation that Principals avoided their federal tax liability as shareholders-employees in Corporate Partners.
In the facts before the court, Corporate Partners are Subchapter S corporations. Because there is no federal entity tax, there can be no federal tax avoidance. For that reason, entity analysis for Subchapter S corporations, like Corporate Partners, focuses on business activity and business purpose.
H. Choice of entity
The "tax avoidance" alleged by Defendant is tied to state income taxes paid by Principals. Rather than tax avoidance, the real issue is the choice of entity that results in Principals paying state income tax in some states but not paying Oregon state income tax on the Stoel Rives partnership income. When considering the choice of entity, "[t]he ground rules for the contest have been established by innumerable court decisions, which make it clear that a taxpayer may adopt any form he desires for the conduct of his business and that the chosen form cannot be ignored merely because it results in a tax saving. However, to be afforded recognition, the form the taxpayer chooses must be a viable business entity, that is, it must have been formed for a *Page 12 
substantial business purpose or actually engage in substantive business activity."[7] Bass v. Comm'r (Bass), 50 TC 595, 600 (1968).Bass reiterates the Moline two-prong test and concludes that even though the choice of entity resulted in "tax saving," the entity was a "viable concern." Id. at 600, 602.
I. Application of Moline, Tower, and Culbertson to partnershipentity.
Defendant asks this court to evaluate Corporate Partners and Principals in the context of the Stoel Rives partnership. Defendant alleges that Principals, not Corporate Partners, "were granted and possessed the benefits and burdens of partnership," and therefore "Individual Plaintiffs are subject to taxation as partners in Stoel Rives." (Def's Resp at 5.).
Moline was the seminal case applicable to corporate entities and partnerships. Defendant requests that the court not solely followMoline and its progeny.
Two U.S. Supreme Court cases, Commissioner v. Tower (Tower),327 US 280, 66 S Ct 532 (1946) and Commissioner v. Culbertson(Culbertson), 337 US 733, 69 S Ct 1210 (1949), provide guidance in determining whether an arrangement is a partnership for tax purposes. Those cases established an intent requirement and, until recently, the intent requirement was not applied to corporate entities.
In Tower, the Supreme Court, in defining a partnership, listed capital investment, sharing losses and control (collectively referred to as theTower factors), as establishing a proprietary interest (or in theTower case, not establishing a partnership). In Culbertson, the United States Tax Court evaluated the "Tower factors" and concluded that the parties did not form a partnership. In an attempt to clarify its holding in Tower, the Supreme Court stated in Culbertson that the issue was whether the parties intended to join "together in good faith to *Page 13 
conduct a business," taking into account capital contributions and abilities "contributed presently by each" of the parties, their control of the income and any other facts showing "[s]tate of mind" and evidencing "value to the partnership" and that, although theTower factors might cast a cloud on the conclusion, those factors alone are not controlling. Culbertson at 743 n 12 (citations omitted), 745.
In sum, Culbertson holds that intent is the controlling factor. Intent is not subjective, but must be proved by objective factors showing that the parties conduct a joint operation for economic gain. "State of mind has always been determinative of the question whether a partnership has been formed as between the parties." Id. at 743 n 12.
Recent holdings of the Court of Appeals for the District of Columbia Circuit (D.C. Circuit) in four partnership cases[8] were based on a blending of the intent requirement found in Culbertson with the two-prong Moline test to conclude that entity recognition is based on evidence of an intent to join together for a non-tax business purpose. The D.C. Circuit concluded that when considering whether the corporate form should be disregarded, the "two-pronged inquiry is in fact a unitary test — whether the `sham' be in the entity or the transaction — under which the absence of a nontax business purpose is fatal."ASA Investerings Partnership v. Commissioner (ASA Investerings),201 F3d 505, 512 (DC Cir 2000). The D.C. Circuit's focus on "sham" and business purpose lead to an economic substance analysis. Id. "There is no real difference between the business purpose and the economic substance rules. * * * Both rules elevate the substance of an action over its form." Zmuda v. Commissioner (Zmuda), 731 F2d 1417, 1420, 1421 (9th Cir 1984). The economic substance doctrine requires an objective and subjective determination of whether a transaction has real, non-tax economic benefit. *Page 14 Frank Lyon Co. v. U.S., 435 U.S. 561 (1978), reh'g 536 F2d 746 (8th Cir 1976) (the Supreme Court set forth the two-prong test); Rice's ToyotaWorld, Inc. v. Commissioner., 752 F2d 89, 90 (4th Cir 1985) (stating that a transaction will be treated as having no economic substance if "the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of profit exists.") (Citations omitted.) The question of whether "a transaction is lacking in economic substance is essentially a factual determination," and the "Tax Court [is] to focus on the facts and circumstances of particular transactions and resolve whether, as a practical matter, those transactions have any economic impact outside the creation of tax deductions." Thompson v. Commissioner, 631 F2d 642, 646 (9th Cir 1980).
J. Applicable law
Defendant asks this court to adopt the ASA Investerings defined unitary test to conclude that Corporate Partners "be disregarded for purposes of Oregon taxation." (Def's Reply at 17.) ASA Investerings
required that an entity be engaged in a business activity and that the entity's transactions not be a sham. Under the facts of that case, the D. C. Circuit Court stated that because the ASA Investerings Partnership was substantially capitalized ($1.1 billion) and invested its capital in various financial instruments it was engaged in business activity. The D.C. Circuit opined that "if engaging in business activity were sufficient to validate a partnership ASA would qualify." ASAInvesterings, 201 F3d at 512. That court goes on to state that "courts have understood the `business activity' reference in Moline to exclude activity whose sole purpose is tax avoidance." Id.; see Moline,319 US at 439, stating that "the corporate form may be disregarded where it is a sham or unreal" and cites Higgins and Helvering. In continuing its business activity analysis, the D.C. Circuit cites Zmuda: "`business activity' is inadequate in the absence of a nonbusiness purpose," and "[a]lthough the taxpayer may structure a transaction *Page 15 
so that it satisfies the formal requirements of the Internal Revenue Code, the Commissioner may deny legal effect to a transaction if its sole purpose is to evade taxation." Zmuda, 731 F2d at 1420, 1421. Ultimately, the D.C. Circuit held that (1) ASA Investerings Partnership business activity was solely conducted to gain a tax benefit and thus failed the Moline test; and (2) ASA Investerings Partnership had no "nontax business purpose" because it was protected from risk and "even from the borrowing costs of providing its capital * * *." ASAInvesterings, 201 F3d at 513. Given its findings that ASA Investerings Partnership failed both the business activity and business purpose tests, the D.C. Circuit's holding was deemed to have collapsed the two-prong Moline test.
In contemplating Defendant's request, the court carefully considered the extensive case law and cited many cases in its decision. It would be improper for this court to ignore its own holding in Brown, the U.S. Supreme Court cases including Moline, and the more than sixty years of case law that has consistently applied the two-prong disjunctive test to determine whether an entity, corporate or partnership, should be recognized. The D.C. Circuit stands apart from the U.S. Supreme Court, United States Tax Court and many other federal circuit courts of appeal in its proclaimed unity test (even though that proclaimed test was followed by the Moline two-prong analysis) when evaluating a partnership. In any event, the court need not limit its case law choice. The court's decision in the above-entitled matter as explained below is the same whether the court follows the holdings in eitherMoline or ASA Investerings.
K. Facts and law
Even though the facts are different in each of the cited cases, the majority of the holdings hinge on whether the court concludes that entity choice leads to federal tax avoidance. The court's summary ofMoline and other applicable law shows that a corporate entity will be respected unless there is an "exceptional situation" like federal tax avoidance. New Colonial, *Page 16 292 US at 442. Because federal tax avoidance is not at issue when the entity is a Subchapter S corporation like Corporate Partners, the court looks at Corporate Partners's business activity and business purpose. The Stipulated Facts list Corporate Partners' business activities. (See, e.g., Stip Facts 31, 32, 33, 38, 39, 40, 41, 46, 47, 48, 49, 50, 51, 52, 53.) Corporate Partners "complied with all the statutory or regulatory requirements applicable to corporations," including the maintenance of corporate books and financial reports, and filed all required tax and similar corporate employer returns. Brown,3 OTR at 491. In addition, Corporate Partners offered, billed, and collected fees for legal services, deposited receipts in a bank account, hired employees including non-legal staff, and signed lease contracts. Corporate Partners "looked like a viable corporation" and "acted like a viable corporation."[9] Bass, 50 TC at 600.
Defendant alleges that Plaintiffs' "stated business purpose for creating the Corporate Plaintiffs" lacks "substance." (Def's Reply at 17.) Defendant's reference to substance is a short title for the economic substance doctrine. The economic substance doctrine set forth in Zmuda requires an objective (business activity) and subjective (business purpose) analysis of whether the transaction had a non-tax business motive or economic benefit. As previously concluded, Corporate Partners engaged in business activities and those activities were not undertaken with an intent to avoid federal taxation. The transactions undertaken by Corporate Partners were carried out for a valid business purpose other than to avoid federal taxation and were undertaken with an expectation of a profit or economic gain. The business purpose test under Moline is unnecessary if an entity engages in business activities and that activity is not undertaken to avoid tax. If there is no discernable business activity or the business activity is undertaken to avoid federal tax, then *Page 17 
the purpose for creating the entity is reviewed. However, even though not necessary under the two-prong Moline test, the subjective analysis (business purpose) is required under the Zmuda economic substance test. Corporate Partners pass the business purpose test. The transactions undertaken by Corporate Partners were carried out for a valid business purpose other than to avoid federal taxation and were undertaken with an expectation of a profit or economic gain. Corporate Partners stated purpose "was to encourage the growth of the new offices, or at least not to discourage that growth." (Ptfs' Mot for Summ J at 14.) This is a business purpose that easily fits within one of the possible purposes ("to serve the creator's personal or undisclosed convenience") listed inMoline. Moline, 319 US at 438. In addition, the Ninth Circuit requirement that a bona fide intent for creating the corporation is to "have some substantial business function or actually engage in a business activity" was fulfilled when Corporate Partners recruited legal professionals (Principals) who became shareholders-employees and successfully operated law firms in each of the three states.Nutt, 39 TC at 249.
Defendant asserts that "the entities who nominally formed the partnership are the Individual Partners and the Corporate Plaintiffs. But their acts and motivations, as demonstrated by the evidence in this case, belie an intent to have the Individual Plaintiffs act as the true partners of the Individual Partners." (Def's Reply at 8.) Defendant cites the example that when interests of some of Corporate Partners's shareholders which were contrary to those of all partners of the Stoel Rives partnership failed to prevail, "the separate corporate existence of the Corporate Plaintiffs necessarily was marginalized." (Def's Cross-Mot at 24, stating the "[p]rincipals in the Boise office complained to the Firm Management Committee about their level of compensation.") *Page 18 
Defendant suggests that the stated provision of the Partnership Agreement that was to minimize the difference between Principals of Corporate Partners and Individual Partners supports its conclusion that Principals, not Corporate Partners, were the true partners. (Def's Cross-Mot at 5, 16.)
In evaluating a partnership[10] arrangement, the Culbertson intent approach relies on no one factor, concluding that "[s]tate of mind has always been determinative of the question whether a partnership has been formed as between the parties." Culbertson, 337 US at 743 n 12 (citations omitted.) The intent of the Corporate Partners and Stoel Rives was clear: "The Partnership Agreement states that Principals are not, and are not intended to be, Individual Partners under the Partnership Agreement or under applicable law." (Stip Fact 99.) The objective to minimize the difference between Principals and Individual Partners does not invalidate the partnership agreement between Corporate Partners and Stoel Rives. The test is whether, based upon all the facts, it can be concluded that the parties "joined together in good faith to conduct a business, having agreed that the services * * * to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, [then] that is sufficient" to conclude that a partnership exists.Culbertson, 337 US at 743 n 12 (citations omitted), 744-745. Corporate Partners' shareholders-employees engaged in business activities and their choice of entity did not result in any federal tax avoidance. Based on the facts of this case, the court concludes that licensed professionals (Principals) came together in good faith to *Page 19 
capitalize on the "substantial amount of goodwill" associated with the Stoel Rives name by forming law firms offering services in multiple locations. (Stip Fact 23.) Having furthered its business growth purpose by operating in multiple locations, Corporate Partners and Stoel Rives formed a valid partnership.
Professional service corporations, like Corporate Partners, are closely held and often employ their shareholders-employees. It is obvious that a corporation acts through its officers and directors. The U.S. Supreme Court held that "when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail * * * make[s] no difference tax wise."National Carbide Corp., 336 US at 432. Principals who were stockholder-employees were engaged in operating law firms. Corporate Partners acting through its stockholders-employees (Principals) were partners of an active business partnership. Corporate Partners and Principals as members of the Stoel Rives Management Committee were entitled with others to set the direction and operations of the partnership. One of the Principals, John S. Kirkham, served on the Compensation Committee. (Stip Fact 108.) There is no legal requirement to put the interests of individuals, especially owners, before that of the interests of the corporation or partnership. In fact, to do so often leads to allegations that the entity is the alter-egos of its owners and disregard of the entity. However, in S corporations[11] the line between the entity and the shareholders is often blurred. It is readily acknowledged that because professional service corporations are closely held, it is likely many questionable related-party transactions arise. Despite this observation, courts are reluctant where, as in this case before the court, there is business activity and no federal tax avoidance to disregard the entity and the acts attributable to the entity. The court shares the following observation: *Page 20 
 "When the rapidly vanishing advantages of professional corporations are weighed in the cold light of day against the tax problems incorporation can generate, corporate status may lose its glamour, and the lavish expenditure of legal time and talent by taxpayers in defense of the professional corporation may bring to mind [Robert] Southey's comment on the Battle of Blenheim, `But `twas a famous victory.'"
Boris I. Bittker and James S. Eustice, 1 Federal Income Taxation ofCorporations and Shareholders, at ¶ 2.06, 2-38 (7th ed 2002).
 III. CONCLUSION
For various reasons, Defendant asks this court to disregard Corporate Partners on the theory that their only purpose is Oregon state income tax avoidance, tax the Corporate Partners's income to the shareholders-employees, and declare Principals were not shareholders-employees of Corporate Partners. The court finds that, after careful review of the stipulated facts and the applicable case law, it cannot grant Defendant's requests. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' Motion for Summary Judgment is granted; and
IT IS FURTHER DECIDED that Defendant's Cross-Motion for Summary Judgment is denied.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJuly 8, 2008. The Court filed and entered this document on July 8,2008.
[1] For ease of reference, the court will refer to the stipulated facts by the number of the fact rather than to a specific page in the document Stipulated Facts filed by the parties.
[2] The Partnership Agreement was revised as of November 1, 1994, and was in effect through the tax year at issue. (Stip Facts 5, 6.)
[3] All references to the Oregon Revised Statutes (ORS) are to year 1995.
[4] All references to the Internal Revenue Code (IRC) are to year 1996.
[5] There is no dispute that the applicable tax law is federal. Even though state law may control certain aspects of business relations, state laws do not control federal tax laws. Stearn Co., LLC, DC Mich., June 29, 2007. "The core test of corporate existence for purposes of federal income taxation is always a matter of federal law." IRC Private Letter Ruling 200252033.
[6] In Noonan, the U. S. Tax Court stated that the "bones of the corporations were without flesh [where the] record is devoid of any evidence that the corporations engaged in any substantive business purpose" other than the sole purpose of federal tax savings.Noonan, 52 TCat 910.
[7] See Red Carpet Car Wash, Inc. v. Comm'r, 73 TC 676, 679 (1980) (holding that the ownership of a partnership interest by a corporation was disregarded because the corporation did not "carry on any trade or business functions, and it had no employees, no bank account, no funds, no capital, no assets, and no taxpayer identification number.")
[8] ASA Investerings Partnership v. Commissioner (ASAInvesterings), 201 F3d 505 (DC Cir 2000); Saba Partnership v.Commissioner, 273 F3d 1135 (DC Cir 2001); Boca Investerings Partnershipv. United States, 314 F3d 625 (DC Cir 2003); and Andantech, LLC v.Commissioner, 331 F3d 972 (DC Cir 2003).
[9] After reviewing the Moline test and the holdings in numerous circuit court of appeals cases, the Fifth Circuit Court of Appeals inBritt concluded that "[b]usiness activity is required for recognition of the corporation as a separate taxable entity; the activity may be minimal," and "that recognition" does not "necessarily depend upon the quantum of business conducted." Britt, 431 F2d at 237.
[10] It is common to find S corporations investing in partnerships to combine corporate tax benefits with the partnership form of business to achieve advantages and flexibility not allowed under the tax code to S corporation shareholders (i.e., special allocations of tax deductions, multiple classes of investment and types of investors such as nonresident alien.)
[11] "Undoubtedly the great majority of corporations owned by sole stockholders are `dummies' in the sense that their policies and day-to-day activities are determined not as decisions of the corporation but by their owners acting individually." National Carbide Corp.,336 US at 433.